BARNARD & LEAS MANUFACTURING COMPANY *v.* SMITH.

Opinion delivered February 10, 1906.

1. SALE—CONSTRUCTION OF CONTRACT.—Where a contract of sale of mill machinery stipulated that the vendee should pay all freights and express charges, and deliver the machinery from the cars to the mill, and that the seller should not be liable for any damages for delay in shipment or starting the mill, in demonstrating results or for defective material, other than to make good such defects, the vendee was not entitled to recover on a claim for freight and hauling charges nor for loss in running the machinery. (Page 597.)

2. APPEAL—AFFIRMANCE BY DIVIDED COURT.—Where the Supreme Court is equally divided upon a proposition, the finding of the chancellor will be affirmed. (Page 598.)

3.   SPECIFIC PERFORMANCE—CONTRACT TO EXECUTE MORTGAGE.—Where a
     vendee of mill machinery, as security for the purchase money, agreed
     to execute a mortgage upon the machinery and the land to which it
     was to be attached, the vendor, upon his refusal to comply therewith,
     became entitled to a lien upon the machinery and the land upon which
     it was situated.   (Page 598.)

Appeal from Izard Chancery Court; GEORGE T. HUMPHRIES,
Chancellor; reversed.

*A. W. Lyon* and *H. C. Young,* for appellant.

1.   The defendants will not be permitted to rescind the con-
tract, and at the same time retain the machinery. Bishop on Cont.
§ 829; 2 Addison on Cont. § 645; 24 Am. & Eng. Enc. Law, 624;
*Ib.* 645, 646; 17 Ark. 228; 25 Ark. 196; 14 S. W. 1095; 52 Ark.
458.

2.   The want of varnish on the reels, if any, was a defect too
trivial to prevent recovery under the contract.   9 Ill. 319; 78 Ill.
27; 32 Iowa, 101; 60 Mich. 26.   In permitting plaintiff to proceed
with performance, defendants waived such defect, and at most
could claim only the actual amount it would cost to varnish the
reels.   88 Ky. 303; 13 La. Ann. 43; 3 Johns. Ch. (N. Y.) 23; 118
N. C. 737; 30 Ala. 286; 66 Ga. 250; 8 Blackf. (Ind.) 215; 150
Mass. 149; 66 Barb. (N. Y.), 103; 19 Hun (N. Y.), 137; 82 Va.
832; 45 Ark. 284; 60 Ark. 613; 55 Ark. 155; 7 Am. & Eng. Enc.
Law, 154; 3 Page on Con. § 1494; 181 Mass. 354.

3.   On cross-bill, plaintiff is entitled to judgment for the
difference between the damage sustained by defendant, if any,
by reason of plaintiff's failure to comply with the contract and the
amount necessary to make good the default.   20 Enc. Pl. & Pr.
500 and notes; *Id.* 479 and notes; 33 Ark. 425.

4.   The allowance of "damages on loss of running machin-
ery" was speculative.   64 Ark. 510; 91 Mo. App. 275.

5.   The other items of damage allowed are contrary to the
express provisions of the contract.

*J. B. Baker* and *John B. McCaleb,* for appellees.

1.   The findings of the chancellor will not be disturbed unless
clearly against the evidence.   71 Ark. 605; 68 Ark. 134; 73 Ark.
489.

2.   Equity will allow damages for nonperformance of con-

tract where it would deny rescission if the party asking rescission could not place the other *in statu quo.* 31 Ala. 219; 7 Blackf. (Ind.), 178; 38 Mo. 55.

3. Waiver was not pleaded. Waiver of a condition precedent must be specially pleaded. 60 N. W. 599; 87 N. W. 331; 89 N. W. 779; 36 Pac. 52; 58 Pac. 222; 103 Iowa, 198.

4. The item of damage for loss of running machinery, being based on facts known to appellant was properly allowed. 40 N. Y. 422; 81 Mo. App. 84; 71 Ark. 408; Sutherland on Dam. 397; 75 Ark. 470.

BATTLE, J. Barnard & Leas Manufacturing Company instituted a suit against M. J. Smith and E. F. Smith, in the Izard Chancery Court. Its complaint is as follows:

"The plaintiff, the Barnard & Leas Manufacturing Company, a corporation, duly organized under the laws of the State of Illinois, and doing business as manufacturer of mill machinery and builder of mills at the city of Moline, in the county of Rock Island, in the State aforesaid, for its cause of action against the defendants, M. J. Smith and E. F. Smith, states: That on the 11th day of March, 1903, the plaintiff entered into a contract with the defendants, which contract was reduced to writing and signed by the parties. A copy of said contract is herewith filed as an exhibit hereto marked 'A,' and plaintiff asks that said contract be taken as part of this complaint.

"Plaintiff states that under the provisions of said contract the plaintiff agreed to furnish the defendants the following described machinery, towit:

1 double stand Willford Moline Roller Mills 9x24 Cor. Drive E.
2 double stand Willford Moline Roller Mills 9x24 Smoothe, Drive E.
1 ——— No. 15 Plan sifter Scalper, 4, Sec., with 4 sieves.
1 No. 1 Horz. Adj. Bran Duster.
8 Elevator Heads for 16 x 4½ pulley.
8 Elevator Boots for 16 x 4½ pulley.
672 ft. 4-in. by 3-ply cotton belt.
504 3½x3 Improved Empire Cups, tin.
1000 Reliance Elevator Bolts, ½x¼.
105 ft. 7-inch Single Leather Belt.
8 Boot Shafts for 16x4½ pulley.
8 Elevator Head Pulleys, 16x4½, bore 1 15-16.
60 ft. 4-inch by 4-ply Rubber.
5 Second-Hand Round Reels, 28x7, with new cloth.
1 G. T. Smith Centrifugal, with new cloth.

"All of the above six reels are now in warehouse at Springfield, Mo., and shall be in good condition, cleaned and made to present a new appearance.

1 Pulley 24 x 4 x 1 11-15 Bran Duster.
1 Pulley 11 x 3 x 1 11-15 Bran Sifter Scalper.
1 Pulley 20 x 4 x 1 11-15 7 Centrifugal Reel.
16 ft. No. 62 link belt.

"To be placed in, connected and used with the flouring mill owned and being operated by the defendants, near the town of Melbourne, Izard County, Arkansas, situated on the following described parcel of land:

"Part of the N. W. ¼ of the N. E. ¼ of Section 12 and part of the S. W. ¼ of the S. E. ¼ of section 1, township 16 north, range 9 west, beginning north 48 degrees, 4 chains and 6 ½ links from W. T. Kendrick's lot on W. O. 14 inches, thence 48 degrees, 3 chains and 80 links with meridian variations, thence N. 32 ¼ and west 4 chains and 63 links to the center of Mill Creek, thence beginning at the beginning Cor. at W. O., thence N. 40 ¾ and W. 3 chains and 85 links to the center of Mill Creek to intersect the line at the N. E. corner of said land.

"The plaintiff states that the price of said machinery is two thousand dollars, but it was agreed by and between the parties that in part payment for said machinery the plaintiff would accept from the defendants 1 No. 2 plan sifter, then in the mill of the defendants, to be delivered free on board of cars, sound and in good condition, and that by reason of said last-named agreement the sum of three hundred and fifty dollars, the reasonable value of said plan sifter, was abated, leaving amount to be paid by the defendants to plaintiff the sum of sixteen hundred and fifty ($1,650) dollars.

"The plaintiff further states that the defendants were by the terms of said contract to pay all freight charges on said machinery, furnish all millwright and other labor necessary to place said machinery in complete operation. The plaintiff was, if required to do so, to furnish a foreman millwright or expert miller while sitting or starting said machinery at $4 per day, with board and traveling expenses to said mill from Springfield, Mo., and return.

"The defendants, in addition to delivering the plan sifter,
38

above mentioned, were to pay to the plaintiff the sum of sixteen hundred and fifty ($1,650) dollars, in installments as follows:

"Fifty dollars cash on closing contract; two hundred and fifty dollars cash upon receipt by defendants of bills of lading for machinery; three hundred dollars cash when mill should be completed and demonstrated to be as guarantied; five hundred and twenty-five dollars eight months after shipment of machinery; and five hundred and twenty-five dollars in eighteen months after shipment of machinery. It was further agreed the two deferred payments of five hundred and twenty-five dollars each should be evidenced by the promissory notes of the defendants. Said notes to bear interest at the rate of 7 per cent. per annum from date, and were to be secured by a first deed of trust on the machinery, mill, mill building of the defendants, and the real estate upon which it is situated.

"It was further agreed that, in case the defendants failed to make settlement as set out in said contract, the whole of the purchase price of said machinery should immediately become due and payable, and the plaintiff might enter upon the premises and remove said machinery without being liable as trespasser or for damages to the premises.

"The plaintiff further states that in pursuance of the contract above set out all of the machinery above mentioned as sold by plaintiff to defendants was in due time shipped to the defendants, addressed at Guion, Arkansas, the station on the St. Louis, Iron Mountain & Southern Railway designated by the defendants as most convenient for them to receive the same; that proper bills of lading were by due course of mail delivered to the defendants; that said machinery arrived at said station within a reasonable time and in good condition, as required by the terms of the contract; that said machinery was accepted by the defendants, and the larger and most valuable parts thereof were removed and put in their millhouse, some twelve miles distant from the said railroad station. The plaintiff states that, notwithstanding the exact compliance with the terms of the contract upon the part of the plaintiff by furnishing and shipping of each and every article of said machinery in strict accordance with the terms of the contract, the plaintiff's readiness and willingness to furnish a foreman mill-wright or expert miller to place said machinery and demonstrate

the capacity of the said mill upon request of defendants, as stipulated in contract, the defendants hold possession of the machinery aforesaid, have failed and refused to deliver the plan sifter of the value of $350 to the plaintiff, have failed and refused to pay the sum of $250 upon receipt of bills of lading for the machinery, have failed and refused to furnish the millwright and other labor to place said machinery so that its capacity can be demonstrated; have failed and refused to execute the notes and deed of trust for the two deferred payments; and have failed and refused to comply with any of the stipulations of their said contract with the plaintiff.

"The plaintiff states that, by reason of defendants' failure to comply with any part of their contract, the sum of $1,650, which the defendants agreed to pay in money and secure by deed of trust, together with the sum of $350, the reasonable value of the plan sifter, which defendants agreed to deliver to plaintiff, in all the sum of $2,000, have become due under the terms of the contract.

"The plaintiff is informed, believes and is advised to say that, by reason of the contract between the parties above set out, the compliance with the terms thereof on the part of the plaintiff, the acceptance and removal of the machinery by the defendants, their retaining possession thereof, their agreement in writing to execute a deed of trust upon the property as above set out, their refusal to perform any part of their contract, constitute an equitable lien in favor of the plaintiff on the property, machinery, mill, mill building and real estate hereinbefore described. Wherefore the plaintiff prays judgment against defendants, M. J. Smith and E. F. Smith, for the sum of $350, the reasonable value of the plan sifter which defendants refuse to deliver to the plaintiff, according to their contract, and the further sum of $1,650, the amount to be paid in money, and now due altogether the sum of $2,000, with 7 per cent. interest thereon; that plaintiff's lien on the machinery, mill, mill building, and real estate hereinbefore described be declared and foreclosed; that defendant's equity of redemption in and to said property be forever barred, and, if the amounts aforesaid be not paid within a time fixed by the court, that said property be sold at such time and upon such terms as the court may direct, and finally for all proper relief.

"FELIX M. HANLEY, *Attorney for Plaintiff.*"

The defendants answered as follows:

"They admit   \*   \*   \*   that the defendants entered into a contract with plaintiff on the 11th day of March, 1903, by which defendants purchased from plaintiff the machinery set out in plaintiff's complaint, but said defendants deny that the price of said machinery was or is the sum of $2,000, as alleged in plaintiff's complaint, and defendants aver that it was agreed that defendants should pay plaintiff the sum of $1,650 for said machinery and a certain plan sifter then in the mill of and belonging to the defendants at Melbourne, Arkansas, valued at the sum of $150.

"Further answering, defendants deny that they are liable on the contract set out in plaintiff's complaint, or that plaintiff is entitled to have a lien on property of defendants mentioned in plaintiff's complaint, by reason of said contract, because they say that it was agreed by and between said plaintiff and defendants in said written contract that the plaintiff should furnish to the defendants, with the other machinery which they agreed to furnish, five second-hand round reels 28x7 with new cloth, and one G. T. Smith centrifugal with new cloth, and that all of said reels should be in good condition, cleaned and made to present a new appearance, all of which will more fully appear by reference to the copy of the contract exhibited with plaintiff's complaint. And defendants aver that plaintiffs failed and refused to comply with its contract in this regard, and say that the reels furnished by plaintiff were not in good condition, and did not present a new appearance, but defendants allege and charge the facts to be that the reels furnished by plaintiff were in bad condition, were greasy and soiled, and had the appearance of being old, and showed long use, and that some of said reels were broken, and could not have been used without repair, and that none of said reels and cloths were in a condition to be used without cleaning and repairing, and for this reason defendants refused to accept said machinery as soon as they became informed of the condition of the same, and that they promptly informed plaintiff of their objections, and refused to receive the same, and requested plaintiff to furnish the machinery as it had agreed, and in the condition agreed

in said written contract, which plaintiff has refused and failed to do.

"Wherefore defendants say that they are not liable on the contracts sued on in tihs case, and that, by reason of said breach of said contract by said plaintiff, it has acquired no lien on said property of defendants, and they therefore pray that the complaint of plaintiff be dismissed, for their costs and for other relief."

In a counterclaim, defendants claim that they were damaged, by reason of the failure of plaintiff to comply with its contract, in the aggregate sum of $1,543.50, and asked for a judgment against it for that amount.

Defendants did not ask for a rescission of the contract or offer to restore the property purchased by them, but on the contrary seek to recover damages of the plaintiff by reason of the alleged violation of their contract.

Upon hearing the cause upon the evidence adduced, the court found that the plaintiff was not entitled to recover on its complaint, because the evidence shows that plaintiff failed to furnish the six reels in the condition it agreed to do, and dismissed the complaint. And the court found upon the counterclaim that defendants had been damaged by the failure of plaintiff to comply with its contract as follows:

To amount paid for freight.....................$129.20
For amount paid for hauling machinery.......... 72.00
For cash paid on machinery...................... 50.00
Damage on loss of running machinery.......... 240.00

Total.......................$491.20

And rendered judgment against plaintiff in favor of defendants for $491.20.

The defendants were not entitled to recover these damages by reason of the following provisions of their contract with plaintiff:

"The second party (defendants) to pay all freights and express charges on machinery and connections from Moline and factory where made, second party to deliver the same from cars to mill floors.

"The first party (plaintiff) agrees to ship said machinery as near the first day of April, A. D. 1903, as possible, barring strikes,

accidents, or other causes of delay beyond its reasonable control. First party shall not be held liable for any pecuniary damages either for delays in shipment or in starting said mill, demonstrating results, or for defective material, other than to make good within a reasonable time said defects."

The only question presented by the complaint and answer is: Were the six reels in good condition, cleaned and made to present a new appearance when shipped to the defendants? The evidence upon this issue is conflicting. The writer and Mr. Justice McCULLOCH are of the opinion that the preponderance of it shows that they were shipped in such condition, except probably they needed revarnishing, which cost about twelve dollars. The other two judges, members of this court, who are present, are of the contrary opinion. This leaves the finding of the chancellor upon this question in full force, the court being equally divided, and relieves the defendants of the obligation to pay for the six reels, which, if according to the contract, would have been worth $300.

In part payment for the machinery the defendants agreed to deliver to plaintiff, free and on board of cars, in sound and good condition a No. 2 plan sifter, then in defendant's mill, worth $150, which they failed and refused to do. In addition to this, they agreed to pay to plaintiff $1,650 for the machinery, and 7 per cent. per annum interest on $1,050 of this amount from the time defendant's mill was completed. Defendants paid $50, leaving $1,600 and the value of the plan sifter, $150, less $300 the value of the six reels, interest at the rate of 7 per cent. per annum on $1,050 of this amount, and 6 per cent. per annum on the remainder, from the commencement of this suit (it not appearing from the evidence when defendant's mill was completed) still due and owing to the plaintiff, for the payment of which it is entitled to a lien on the machinery, mill, mill building of the defendants, and the real estate upon which it is situate, and to the foreclosure thereof.

The decree of the trial court, except as to the reels, is therefore reversed, and the cause is remanded with instructions to the court to render a decree in accordance with this opinion.